**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**

-------------------------------------------------------------------x
JIANMING YU and
SHUJUN LI,
*on behalf of themselves and others similarly situated,*
                                               Plaintiff,

                                           v.

HIGHLAND NOODLES, INC.
     d/b/a Highland Noodles,
JUXIANG LI, and
WENYUAN ZHANG
     a/k/a Chelsea Zhang,
                                               Defendants.
-------------------------------------------------------------------x

Case No. 24-cv-00706

**29 U.S.C. § 216(b) COLLECTIVE AND CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs JIANMING YU (hereinafter "Yu") and SHUJUN LI (hereinafter "S. Li;" hereinafter collectively with Yu, "Plaintiffs"), by and through their attorneys, Tiffany Troy of Troy Law, PLLC (and John Troy and Aaron B. Schweitzer of Troy Law, PLLC, to be admitted *pro hac vice*), hereby bring this Complaint against Defendants HIGHLAND NOODLES, INC. d/b/a Highland Noodles (hereinafter "Highland Noodles" or "Corporate Defendant"), JUXIANG LI (hereinafter "J. Li"), WENYUAN ZHANG a/k/a Chelsea Zhang (hereinafter "Zhang;" hereinafter collectively with J. Li, "Individual Defendants;" Individual Defendants collectively with Corporate Defendant, "Defendants"), and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this action, on behalf of themselves and other similarly situated employees of Highland Noodles Chinese restaurant, located at 9188 Prestmont Place, Suite 110, Building A, Frisco, TX 75035, against Defendants for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Internal Revenue Code ("IRC"), 26 U.S.C. § 7434, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.

2. Yu alleges pursuant to FLSA, 29 U.S.C. §§ 207(a), 216(b) that he is entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages equal to unpaid overtime wages, or prejudgment interest thereon, (3) postjudgment interest, and (4) reasonable attorneys' fees and costs.

3. Yu further alleges pursuant to IRC, 26 U.S.C. § 7434(b), that he is entitled to recover from the Defendants the greater of: (1) five thousand dollars ($5,000.00); or (2) the sum of actual damages sustained as a proximate result of the filing of fraudulent information return(s), the costs of this action, and at the court's discretion reasonable attorney fees.

4. S. Li additionally alleges pursuant to FLSA, 29 U.S.C. §§ 203(m), 206(a), 216(b), that she is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unlawfully-retained tips, (3) liquidated damages equal to unpaid minimum wages and unlawfully-retained tips, or prejudgment interest thereon, (4) postjudgment interest, and (5) reasonable attorneys' fees and costs.

5. Plaintiffs have fulfilled all conditions precedent or such conditions have been waived.

## JURISDICTION & VENUE

6. The court has subject matter jurisdictions over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. As set forth more fully below, Highland Noodle is a covered enterprise under the FLSA, inasmuch as it engaged in interstate and/or foreign commerce, had more than $500,000.00 in gross annual revenue during the relevant period, and Plaintiffs and other employees handled goods that had been moved in commerce; and Individual Defendants were Plaintiffs' employers jointly with Highland Noodle.

7. Venue is proper in the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1391, because Defendants reside and/or conduct business in the Eastern

District of Texas, and because the acts and omissions giving rise to the claims alleged herein took place within the Eastern District of Texas.

## PLAINTIFFS

### *JIANMING YU*

8. Yu was employed by Defendants to work as a chef at Highland Noodles from on or about May 1, 2023 through on or about July 23, 2024.

### *SHUJUN LI*

9. S. Li was employed by Defendants to work as a server at Highland Noodles from on or about January 10, 2021 through on or about August 15, 2023, and from on or about October 16, 2023 through on or about July 28, 2024 (but only the period three (3) years prior to the filing of this lawsuit is relevant to this lawsuit).

## DEFENDANTS

### *HIGHLAND NOODLES, INC. d/b/a Highland Noodles*

10. Corporate Defendant was, throughout the period relevant to this lawsuit, a domestic business corporation with a registered address and principal place of business at 9188 Prestmont Place, Suite 110, Building A, Frisco, TX 75035, where it operated Highland Noodles.

11. Corporate Defendant was, throughout the period relevant to this lawsuit, a business with gross annual revenue in excess of five hundred thousand dollars ($500,000.00) per year—according to Yu's observations, Corporate Defendant had gross annual revenue of between one million and two million dollars ($1,000,000.00–$2,000,000.00).

12. Corporate Defendant was, throughout the period relevant to this lawsuit, a business engaged in interstate or foreign commerce, including in ingredients for various dishes, whose employees, including Plaintiffs, handled goods moved in commerce, including ingredients and cleaning supplies.

13. Corporate Defendant throughout the period relevant to this lawsuit employed about fifteen (15) employees, including Plaintiffs, at any one time: six to seven (6–7) servers and eight (8) kitchen workers (chefs, "fry woks" (*i.e.*, stir-fry chefs), "oil woks" (*i.e.*, deep-fry chefs), cold dish chefs, chefs' helpers, noodle makers, and miscellaneous worker).

### *JUXIANG LI*

14. J. Li was, throughout the period relevant to this lawsuit, a 30% shareholder of, a member of the Board of Directors of, and the registered agent of Corporate Defendant, and a day-to-day, on-site, hands-on manager of Highland Noodles, who had the power to hire and fire employees, supervised Plaintiffs and the other employees, gave Plaintiffs and other employees their assignments, determined Plaintiffs' and other employees' schedules, determined Plaintiffs' and other employees' salaries, and was responsible for preparing and keeping records of the employee payroll.

15. J. Li is Zhang's mother.

16. Throughout the period relevant to this lawsuit, J. Li, together with Zhang, exercised financial and operational control over the Corporate Defendant, and controlled Plaintiffs' and other employees' employments at Highland Noodles.

17. Throughout the period relevant to this lawsuit, J. Li rented, and provided employees including Yu with company housing, in which she also lived.

18. J. Li acted willfully, intentionally, and maliciously and was Plaintiffs' employer, and the employer of other employees similarly situated, within the meaning of FLSA, and is jointly and severally liable with Corporate Defendant under the FLSA.

### *WENYUAN ZHANG a/k/a Chelsea Zhang*

19. Zhang was, throughout the period relevant to this lawsuit, a 70% shareholder of Corporate Defendant and a day-to-day, on-site, hands-on manager of Highland Noodles, who had

the power to hire and fire employees, supervised Plaintiffs and the other employees, gave Plaintiffs and other employees their assignments, determined Plaintiffs' and other employees' schedules, determined Plaintiffs' and other employees' salaries, and was responsible for preparing and keeping records of the employee payroll.

20. Zhang is J. Li's daughter.

21. Throughout the period relevant to this lawsuit, Zhang, together with J. Li, exercised financial and operational control over the Corporate Defendant, and controlled Plaintiffs' and other employees' employments at Highland Noodles.

22. Zhang acted willfully, intentionally, and maliciously and was Plaintiff's employer, and the employer of other employees similarly situated, within the meaning of FLSA, and is jointly and severally liable with Corporate Defendant under the FLSA.

## STATEMENT OF FACTS

### *JIANMING YU*

23. From on or about May 1, 2023 through on or about July 31, 2023, Yu worked six (6) days per week for Highland Noodles. Which days per week he worked varied from week to week depending on how J. Li and Zhang scheduled him, but when he worked Mondays through Thursdays he was scheduled to work from 10:30 AM through 2:30 PM and from 4:30 PM through 9:30 PM; when he worked Fridays he was scheduled to work from 10:30 AM through 2:30 PM and from 4:30 PM through 10:00 PM; when he worked Saturdays he was scheduled to work from 10:30 AM through 3:00 PM and from 4:30 PM through 10:00 PM; and when he worked Sundays he was scheduled to work from 10:30 AM through 3:00 PM and from 4:30 PM through 9:30 PM. That is, Yu was scheduled to work at least fifty-five (55) hours per week (if Saturday was his day off), at most fifty-six (56) hours per week (if any of Monday through Thursday was his day off),

on average fifty-five hours and fifty-three minutes (55.71 hours) per week, and most frequently fifty-six (56) hours per week.

24.     However, Yu was regularly required to stay at work about one (1) additional hour about one (1) day per week.

25.     Accordingly, from on or about May 1, 2023 through on or about July 31, 2023, Yu regularly worked at least fifty-six (56) hours per week (if Saturday was his day off), at most fifty-seven (57) hours per week (if any of Monday through Thursday was his day off), on average fifty-six hours and fifty-three minutes (56.71 hours) per week, and most frequently fifty-seven (57) hours per week.

26.     From on or about August 1, 2023 through on or about June 24, 2024, Yu worked five (5) days per week for Highland Noodles. Which days per week he worked varied from week to week depending on how J. Li and Zhang scheduled him, but when he worked Mondays through Thursdays he was scheduled to work from 10:30 AM through 2:30 PM and from 4:30 PM through 9:30 PM; when he worked Fridays he was scheduled to work from 10:30 AM through 2:30 PM and from 4:30 PM through 10:00 PM; when he worked Saturdays he was scheduled to work from 10:30 AM through 3:00 PM and from 4:30 PM through 10:00 PM; and when he worked Sundays he was scheduled to work from 10:30 AM through 3:00 PM and from 4:30 PM through 9:30 PM. That is, Yu was scheduled to work at least forty-five and one-half (45) hours per week (if Saturday and either of Friday or Sunday were his days off), at most forty-seven (47) hours per week (if any two of Monday through Thursday were his days off), on average forty-six hours and twenty-six minutes (46.43 hours) per week, and most frequently forty-six and one-half (46.5) hours per week.

27.     However, Yu was regularly required to stay at work about one (1) additional hour about one (1) day per week.

28. Accordingly, from on or about August 1, 2023 through on or about June 24, 2024, Yu regularly worked at least forty-six and one-half (46.5) hours per week (if Saturday and either of Friday or Sunday were his days off), at most forty-eight (48) hours per week (if any two of Monday through Thursday were his days off), on average forty-seven hours and twenty-six minutes (47.43 hours) per week, and most frequently forty-seven and one-half (46.5) hours per week.

29. From on or about June 25, 2024 through on or about July 23, 2024, Yu worked seven (7) days per week for Highland Noodles: on Mondays through Thursdays he was scheduled to work from 10:30 AM through 2:30 PM and from 4:30 PM through 9:30 PM; on Fridays he was scheduled to work from 10:30 AM through 2:30 PM and from 4:30 PM through 10:00 PM; on Saturdays he was scheduled to work from 10:30 AM through 3:00 PM and from 4:30 PM through 10:00 PM; and on Sundays he was scheduled to work from 10:30 AM through 3:00 PM and from 4:30 PM through 9:30 PM. That is, Yu was scheduled to work sixty-five (65) hours per week.

30. However, Yu was regularly required to stay at work about one (1) additional hour about one (1) day per week.

31. Accordingly, from on or about June 25, 2024 through on or about July 23, 2024, Yu regularly worked sixty-six (66) hours per week.

32. From on or about May 1, 2023 through on or about June 24, 2024, Yu was paid a monthly salary of six thousand five hundred dollars ($6,500.00), in semimonthly installments of three thousand two hundred fifty dollars ($3,250.00) consisting of seven hundred fifty dollars ($750.00) by check and two thousand five hundred dollars ($2,500.00) by cash.

33. From on or about June 25, 2024 through on or about July 23, 2024, Yu was paid a monthly salary of six thousand seven hundred ninety-five dollars ($6,795.00), in semimonthly installments each consisting of seven hundred fifty dollars ($750.00) and the remainder in cash.

34. Individual Defendants explained to Yu that the additional two hundred ninety-five dollars ($295.00) per month was calculated on the basis of six thousand five hundred dollars ($6,500.00) per month divided by twenty-two (22) days per month—that is, it was a daily rate.

35. Throughout the period relevant to this lawsuit, Defendants housed Yu in a company dormitory. Upon information and belief, the cost to house Yu amounted to about six hundred dollars ($600.00) per month.

36. Neither Individual Defendants, nor anyone else on behalf of Highland Noodles, gave Yu any notice that there would be a lodging credit applied to the minimum wage.

37. Because neither Individual Defendants, nor anyone else on behalf of Highland Noodles, told Yu there would be a lodging credit applied to the minimum wage, Defendants were not entitled to claim a lodging credit.

38. Because neither Individual Defendant, nor anyone else on behalf of Highland Noodles, told Yu there would be a lodging credit applied to the minimum wage, Zhang's compensation, for purposes of calculating his regular rate of pay, is his actual wages paid, plus the value of his lodging—that is, seven thousand one hundred dollars ($7,100.00) per month from on or about May 1, 2023 through on or about June 24, 2024; and seven thousand three hundred ninety-five dollars ($7,395.00) per month thereafter.

39. Throughout the period relevant to this lawsuit, Yu's compensation did not include pay at one and one-half times his regular rate of pay for hours worked beyond the fortieth (40th) hour per week.

40. Throughout the period relevant to this lawsuit, Yu was not exempt from receiving overtime under the FLSA.

41. Throughout the period relevant to this lawsuit, Yu was not a creative professional. Highland Noodles primarily served stir-fry, noodle dishes, and noodle soups which did not require any special skill or training to make.

42. Throughout the period relevant to this lawsuit, Yu was not an executive employee. His primary duty was cooking dishes; he had no authority to hire or fire or promotion and did not make recommendations regarding same which were given particular weight; and he had no managerial authority over any of the other employees, who all reported to Individual Defendants.

43. Throughout the period relevant to this lawsuit, Yu was not an administrative employee. His primary duty was cooking dishes, and he did not keep or maintain business or financial records for Highland Noodles.

44. Defendants did not keep any records of Yu's working time.

45. Defendants did not post a notice of employees' rights under the FLSA on the premises of Highland Noodles.

46. Yu's pay checks were each in the amount of seven hundred fifty dollars ($750.00) net, without tax withholding.

47. Yu was paid approximately fifty-two thousand dollars ($52,000.00) (six thousand five hundred dollars ($6,500.00) per month times eight (8) months) at Highland Noodles from on or about May 1, 2023 through on or about December 31, 2023, not counting the value of his lodging.

48. Despite both the foregoing facts, Defendants issued Yu an IRS Form W-2 that falsely stated that he had been paid thirteen thousand seven hundred ninety-one dollars and thirty-

three cents ($13,791.33) in wages and had the following taxes withheld: one thousand eight hundred eleven dollars and thirty-one cents ($1,811.31) in federal income tax; eight hundred fifty-five dollars and six cents ($855.06) in Social Security tax; and one hundred ninety-nine dollars and ninety-seven cents ($199.97) in Medicare tax—and additionally filed other and further information returns incorporating the false information therein including upon information and belief quarterly IRS Form 941s, an annual IRS Form 940, and an IRS Form 1120 for 2023.

49. Defendants committed the following acts knowingly, willfully, maliciously, and in bad faith against Yu and other employees similarly situated.

### *SHUJUN LI*

50. Throughout her employment, S. Li about thirty (30) hours and five (5) days per week: from 10:30 AM through 2:30 PM and from 5:00 PM through 9:30 PM on Mondays and Thursdays; from 10:30 AM through 2:30 PM on Fridays; and from 10:30 AM through 3:00 PM on Saturdays and Sundays.

51. Throughout her employment, S. Li was paid five dollars ($5.00) per hour.

52. Throughout her employment, S. Li earned about seven hundred dollars ($700.00) per day—that is, about three thousand five hundred dollars ($3,500.00) per week—in tips.

53. However, throughout her employment, Individual Defendants retained, upon information and belief for their own use, fifteen percent (15%)—that is, approximately one hundred five dollars ($105.00) per day or five hundred twenty-five dollars ($525.00) per week—of S. Li's earned tips.

54. Neither Individual Defendants, nor anyone else on behalf of Highland Noodles, gave S. Li any notice that there would be a tip credit applied to the minimum wage, or otherwise explained to S. Li the provisions of Section 203(m) of the FLSA.

55. Because neither Individual Defendants, nor anyone else on behalf of Highland Noodles, told S. Li there would be a tip credit applied to the minimum wage, or otherwise explained to S. Li the provisions of Section 203(m) of the FLSA, and also because Individual Defendants retained a portion of S. Li's tips for their own use, Defendants were not entitled to claim a tip credit.

56. Defendants did not keep any records of S. Li's working time.

57. Defendants did not post a notice of employees' rights under the FLSA on the premises of Highland Noodles.

58. Defendants committed the following acts knowingly, willfully, maliciously, and in bad faith against S. Li and other employees similarly situated.

## COLLECTIVE ALLEGATIONS

59. Plaintiffs bring their FLSA claims individually and on behalf of all other current and former non-exempt workers employed by Defendants at Highland Noodles over the three (3) years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

## CLASS ALLEGATIONS

60. Yu brings his IRC claims pursuant to Fed. R. Civ. P. 23, on behalf of "himself and all other current and former non-exempt workers employed by Defendants at Highland Noodles during the six (6) years preceding the filing of this Complaint, through entry of judgment in this case" (the "Class").

61. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The compensation paid, the positions held, and compensation reported for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *NUMEROSITY*

62.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *COMMONALITY*

63.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

    a.     Whether Defendants filed fraudulent information returns with respect to Plaintiff and the Class members within the meaning of the IRC; and

    b.     At what common rate, or rates subject to common method of calculation were and are Defendants required to compensate the Class members for having filed fraudulent information returns?

### *TYPICALITY*

64.     Yu's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of filing fraudulent information returns. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class

members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### *ADEQUACY*

65. Yu is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Yu is represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

### *SUPERIORITY*

66. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of litigation where individual employee Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

67. Upon information and belief, Defendants and other employers throughout the District violate the IRC. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION

### COUNT I.
### VIOLATION OF 29 U.S.C. § 207—FAILURE TO PAY OVERTIME
### BROUGHT ON BEHALF OF PLAINTIFF YU AND THE COLLECTIVE AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

68. Plaintiffs re-allege and incorporate by reference all factual averments as though fully set forth herein.

69. Section 207(a)(1) of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

70. Throughout his employment, Yu was paid a salary that did not include additional pay at time-and-a-half for overtime.

71. Throughout his employment, Yu was not an employee exempt from the overtime provisions of the FLSA.

72. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

73. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Yu overtime.

## COUNT II.
### VIOLATION OF 26 U.S.C. § 7434—FRAUDULENT FILING OF INFORMATION RETURNS
### BROUGHT ON BEHALF OF PLAINTIFF YU AND THE CLASS AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

74. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

75. 26 U.S.C. § 7434(a) provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person filing such information return."

76. Defendants willfully underreported Yu's salary income to the IRS on his 2023 Form W-2 and falsely reported therein that they withheld taxes they had not in fact withheld, and incorporated the false information therein into other information returns filed with the IRS.

77. 26 U.S.C. § 7434(b) provides that "[i]n any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of—(1) any actual damages sustained by

the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees."

## COUNT III.
### VIOLATION OF 29 U.S.C. § 206—FAILURE TO PAY MINIMUM WAGE BROUGHT ON BEHALF OF PLAINTIFF S. LI AND THE COLLECTIVE AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

78. Plaintiffs re-allege and incorporate by reference all factual averments as though fully set forth herein.

79. Section 206(a) of the FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than—… (C) $7.25 an hour, beginning 24 months after th[e] 60th day [after May 25, 2007]."

80. Throughout her employment, S. Li was paid $5.00 per hour.

81. Section 203(m)(2)(A)(ii) of the FLSA provides that an employer may not take a tip credit "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

82. Section 203(m)(2)(B) of the FLSA further provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

83. Because neither Individual Defendants, nor anyone else on behalf of Highland Noodles, told S. Li there would be a tip credit applied to the minimum wage, or otherwise

explained to S. Li the provisions of Section 203(m) of the FLSA, and also because Individual Defendants retained a portion of S. Li's tips for their own use, Defendants were not entitled to claim a tip credit.

84. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 206… of this title shall be liable to the employee or employees affected in the amount of their… unpaid minimum wages… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

85. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay S. Li minimum wage.

## COUNT IV.
### VIOLATION OF 29 U.S.C. § 203(m)(2)(B)—RETENTION OF TIPS BROUGHT ON BEHALF OF PLAINTIFF S. LI AND THE COLLECTIVE AGAINST THE DEFENDANTS, JOINTLY AND SEVERALLY

86. Plaintiffs re-allege and incorporate by reference all factual averments as though fully set forth herein.

87. Section 203(m)(2)(B) of the FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

88. Individual Defendants retained fifteen percent (15%) of S. Li's tips for their own use.

89. Section 216(b) of the FLSA provides that "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer,

and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

90. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by retaining a portion of S. Li's tips.

## JURY DEMAND

91. Plaintiffs demand a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of others similarly situated, respectfully request that this Court enter a judgment providing the following relief:

A. At the earliest practicable time giving notice of this collective action, or authorizing Plaintiffs to give notice of this collective action, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of the notice's issuance, been employed by Defendants as non-exempt workers. Such notice shall inform such employees that this lawsuit has been filed, of the nature of this lawsuit, and of their right to join this lawsuit if they believe they were denied overtime pay;

B. A declaratory judgment that the practices complained of herein are unlawful under FLSA and IRC;

C. An injunction against Corporate Defendant, its shareholders, managers, agents, successors, employees, representatives, and any and all persons acting in concert with it as provided by law, including but not limited to the Individual Defendants, from engaging in each of the unlawful practices and policies set forth herein;

D. An award of unpaid overtime, and liquidated damages equal to unpaid overtime, due to Yu and any applicable opt-ins under FLSA;

E. An award of $5,000.00 due to Yu and each other Class member under the IRC;

F. An award of unpaid minimum wages, and liquidated damages equal to unpaid minimum wages, due to S. Li and any applicable opt-ins under the FLSA;

G. An award of retained tips, and liquidated damages equal to retained tips, due to S. Li and any applicable opt-ins under the FLSA;

H. An award of post-judgment interest under the FLSA;

I. An award of reasonable attorneys' fees and costs under FLSA; and

J. Any such other and further legal or equitable relief as the Court may deem necessary, just, and proper.

Dated: Flushing, NY
      August 7, 2024

TROY LAW, PLLC

*/s/ Tiffany Troy*
Tiffany Troy, Esq.
Aaron B. Schweitzer, Esq.
John Troy, Esq.
TROY LAW, PLLC
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Phone (718) 762-1324
Fax (718) 762-1342
troylaw@troypllc.com
*Attorneys for Plaintiffs*
*John Troy, Esq. and Aaron B. Schweitzer, Esq.*
*to be admitted* pro hac vice